WILLIAM H. BAVE and MARIANA M. BAVE, his wife, CLINTON F. MILLER and ELIZABETH H. MILLER, his wife, WILLARD R. YARNALL and DOROTHY W. YARNALL, his wife, FRANKLIN A. BEHLING and MARJORIE F. BEHLING, his wife, HARRY G. BIMMERMAN and MARIAN L. BIMMERMAN, his wife, JOHN F. BROEKER and JEAN W. BROEKER, his wife,

Plaintiffs,

<em>vs.</em>

J. LAPENNE GUENVEUR,<br>Defendant.

<em>New Castle, September 14, 1956.</em>

*Clement C. Wood,* of Allmond & Wood, Wilmington, for plaintiffs.

*Rodney Layton,* of Richards, Layton & Finger, Wilmington, for defendant.

SEITZ, Chancellor: Plaintiffs, lot owners in a development known as Westover Hills, seek to have defendant restrained from putting a public road through his lot which faces on Greenwood Road on the ground that such a use would violate restrictions allegedly applicable to his property. Defendant has moved for a summary judgment dismissing the action on the ground that such restrictions are inapplicable. This is the decision on the motion.

In connection with the pending case it is sufficient to say that we must consider whether restrictions admittedly binding on Block O in Westover Hills apply to defendant's lot on the grounds that defendant's lot is either expressly or by implication a part of Block O. While there are other plaintiffs I conclude that a consideration of the rights of the plaintiffs, Bave and Miller, whose lots adjoin defendant's lot on each side, will dispose of the rights of all plaintiffs.

An elaborate statement of the evolution of the Westover Hills development may be found in the opinion of the Delaware Supreme Court in *Gammons v. Kennett Park Dev. Corp.,* 30 *Del.Ch.* 525, 61 *A.2d* 391. It is sufficient here to say that Delaware Land and Development Company ("Development") acquired a great area of which Block O was a part. From time to time thereafter it placed plots on record covering particular sections and imposed certain restrictions thereon, each set of restrictions being applicable only to that section.

On February 14, 1942, Development recorded a plot entitled a "Portion of Block O" and made it subject to certain recorded restrictions. It is primarily because of this plot that plaintiffs say what is now the defendant's lot is a part of Block O and subject to its restrictions. Defendant naturally takes a contrary position. I might say that plaintiffs tacitly concede that until this plot was recorded the restrictions applicable to what is now defendant's lot did not prevent the intended use.

■ Let us consider plaintiffs' contention that the plot of a "Portion of Block O" recorded by Development and dated February 14, 1942, shows that what is now the land of the plaintiff Bave and the defendant was to be included as part of Block O. Plaintiffs rely on the fact that the plot shows that a solid black line, marking the street line of the street on which most lots of Block O face, continues beyond the last lot which is laid out by number (lot No. 14 being the last and belonging to Miller) and includes the fronts of what are now the lots of plaintiff, Bave, and the defendant. This is true but does it support a conclusion that anyone examining the plan would reasonably infer that the property which now constitutes the lots of Bave and defendant was thereby intended to be made a part of Block O?

There are on the plot no lines enclosing or numbers marking the area which later became the lots of Bave and this defendant. Thus a question would immediately arise as to which additional lots were intended to be a part of Block O in the event more than the numbered lots on the plot were to be included. In contrast the area bearing the capital letter "O" is completely enclosed and is marked out in numbered lots with the footage and set back lines indicated. Also these lots have a greater depth than the properties now belonging to Bave and defendant.

I conclude that the use of the line extension shown on the plot did not reasonably evidence an intention to make what is now the defendant's lot a part of Block O.

■ Plaintiffs next suggest that the language on the plot, "Portion of Block O", indicates by the word "Portion" that more was to

be encompassed within Block O. It is perfectly true that the use of the word "Portion" suggests that more might be included but rather than support plaintiffs' contention I think it evident that the use of the word puts the reader on notice that something less than the entire area was being dedicated when the plot was recorded.

■ As the Supreme Court of Delaware said in *Gammons v. Kennett Park Development Corporation*, 30 *Del.Ch.* 525, 61 *A.2d* 391, 394:

> "There is no legal reason why a developer cannot develop successive portions of his lands independently of one another, imposing different restrictions (or none at all) upon each, provided the deeds clearly evidence the explicit intent to limit the burden and the benefit to the designated area or definitely show an intent not to impose similar restrictions upon all."

■ Thus Development was free to develop the various portions of the area known as Westover Hills as it saw fit, subject of course to whatever restrictions it desired to impose, if any. This being so, Development was free to develop a "Portion" of a so-called block in the same manner so long as that explicit intent was clearly evident. In filing the plot, Development did not thereby mislead because the language of the deeds to lots in Block O when read in conjunction with the recorded plot made the intended scope of the restrictions clearly evident to the reasonable reader. The plaintiff Bave has even less basis to complain because there is nothing in his deed to suggest that his or the defendant's land was a part of Block O. Indeed that area then had its own restrictions of record.

I conclude that the record does not support plaintiffs' contention that Development by its recorded plot of February 14, 1942, placed the property now owned by defendant within the area identified on the plot as Block O. Plaintiffs' counsel conceded at oral argument that a Plat Plan recorded by Kennett in April, 1955, has no relevancy since it was recorded after Kennett had sold what is now defendant's lot.

■ Plaintiffs point out, however, that the property which is now defendant's lot (but which was still owned by Development in 1947)

was made the subject of a deed from Development to the Levy Court of New Castle County on June 27, 1947. By this deed Development granted to the Levy Court the "use of the pumping plant and the land upon which it is located in Block O of Section B of Westover Hills" so long as it was used for that purpose. The parties agree that the pumping station was on what is now defendant's lot.

Since Development in 1947 still owned the property of which the plaintiff Bave and the defendant's lots are now a part, it was free to impose thereon whatever additional legal restrictions it desired, if any. The question then is whether Development by the deed of June 27, 1947, to the Levy Court evidenced an intention to make what is now the defendant's lot a portion of Block O and thus subject to restrictions which would prevent its intended use for a public road.

The deed to the Levy Court from Development did not give any description of Block O. Nor did the attached maps show Block O as such. One map did show the location of the pumping station and I infer that if properly plotted it would show that the pumping station was on what is now the defendant's property. This being so, can it be inferred that by this deed conveying the use of the land, Development can be said to have reasonably intended to make the land now owned by defendant a portion of Block O? I think not. First of all the deed does not deal with the fee to what is now the defendant's lot. It merely grants a limited use. Moreover, the area which was to be subject to the use was not necessarily the same as defendant's lot. Consequently, no definite area of record could be identified as that which Development had incorporated in Block O. Finally, the very limited purpose of the deed to the Levy Court does not justify the inference that the grantor thereby intended to enlarge Block O and thus impose additional restrictions on some undefined area. Indeed, the then existing use for a pumping station was contrary to the restrictions binding on Block O. Nor do I believe that a reasonable potential purchaser could have been misled by what only amounts to no more than a misdescription of the prior chain of title in the deed to the Levy Court.

I conclude that plaintiffs have failed to show that defendant's property was expressly made a portion of Block O and therefore subject to the restrictions binding on that block.

Plaintiffs argue that in any event the defendant's land is a part of Block O by implication and therefore subject to the restrictions applicable to that block. In making this point plaintiffs rely largely on allegations in plaintiff Lawrence's affidavit. In that affidavit Lawrence, who owns property in what is admittedly a part of Block O, states that just prior to his purchase of his lot Development constructed the road in front of his property. He states that it ran past the property now owned by the defendant and down to the end of the property owned by plaintiff, Bave. He avers that the same is true of the sidewalks, ornamental trees, etc. He states that the pumping station which was located on what is now defendant's property was obscured by ornamental trees. The plaintiff Lawrence states that in view of the foregoing he understood and believed that Block O extended at least down to and including the Bave property and of necessity included the defendant's property. Lawrence also states that at the time he purchased his lot he has shown a plot plan of Block O which he says "clearly indicated that the said Block O extended at least down to and including the aforesaid Bave property", thus including defendant's lot. It is not made clear but I infer that the plaintiff Lawrence by the quoted statement is referring to the recorded plot dated February 14, 1942. If my inference is incorrect counsel should call it to my attention.

Plaintiff Lawrence also states that at the time of his interview with Development to obtain approval of his contract to purchase his lot in Block O he was told that the lot now belonging to the defendant was leased to the county to permit operation of a sewage pumping station thereon and that when the operation of that station was no longer necessary the premises would revert to Development and would be used as a building lot. Plaintiff identifies the officer of Development who allegedly made such a statement.

 Since a developer is free to develop an area section by section and by the use of appropriate language to subject it to whatever restrictions he may desire, it would seem necessary to follow that where he employs such language in the recorded chain of title the prospective purchasers are bound by the language in the chain of title

and may not rely upon physical appearances. Otherwise, record title would have limited significance. Since I have concluded that Development explicitly identified of record the area which was restricted as Block O, which did not embrace defendant's lot, it follows that it is not relevant that Development also paved the street and made other improvements beyond the area embraced within the plot of Block O.

Nor is there any merit in the point that the plaintiff Lawrence was shown a plot plan of Block O because, as heretofore indicated, I cannot agree that a reasonable person viewing the recorded plot of Block O dated February 14, 1942, would conclude that what is now the defendant's lot was a part of the land dedicated by that plot as a "Portion of Block O".

Nor are plaintiffs helped by the fact that Development through its agent may have stated that the lot now belonging to defendant would be used for a building lot. First, Development did not violate its alleged representation since it thereafter sold the lot to *Kennett Park Development Corp.* without change. Kennett, which I assume was a bona fide purchaser, was not shown to have knowledge of this oral statement. In any event Kennett also sold the lot without violating the alleged representation. Finally, so far as appears, this defendant is a bona fide purchaser for value without notice of such alleged oral representation by Development and is therefore not to be held bound by it.

I conclude that the issues posed by the affidavit of plaintiff Lawrence are irrelevant and that there is therefore no material factual issue in dispute. It appearing that plaintiffs have failed to sustain their burden of showing that the restrictions on Block O apply to the land owned by defendant (see *Gammons v. Kennett Park Dev. Corp.*, above) and it being conceded that if such is the case the defendant is free to place a public road on his lot, it follows that defendant's motion for a summary judgment dismissing the complaint must be granted. The other contentions of plaintiffs were abandoned at oral argument and will not be considered.

Order on notice.